IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


Scottsdale Insurance Company,       )
                                    )
        Plaintiff,                  )
                                    )
                                    )
        v.                          )        No. 24 C 13334
                                    )
                                    )
Precision Millwright &              )
Machine, Inc., *et al.*,            )
                                    )
        Defendants.                 )


Memorandum Opinion and Order

Plaintiff Scottsdale Insurance Company ("Scottsdale") insured defendant Precision Millwright & Machine, Inc. ("Precision"). Defendant Powell Electrical Systems, Inc. ("Powell") hired Precision to install machinery. Precision accidentally destroyed that machinery. Powell won an arbitration award against Precision, and Scottsdale has sued for a judgment declaring that it will not have to pay either defendant. Recently, Precision assigned its rights under the insurance policy to Powell. Before me now are Powell's motion to be substituted for Precision as the real party in interest as well as Powell's and Scottsdale's cross motions to dismiss.

1

**I.**

Precision purchased an insurance policy from Scottsdale which was effective from February 2022 to February 2023. In October 2022, Powell hired Precision to install a press brake in Powell's factory in Illinois.[1] Over multiple visits, Precision failed to install the press brake and then knocked it over, destroying it and damaging Powell's factory floor.

Powell's contract with Precision provided for binding arbitration in Texas, and Powell filed an arbitration demand there seeking costs and damages. In November 2024, the Texas arbitrator found Precision liable to Powell but postponed the damages decision. On December 30, 2024, Scottsdale filed this lawsuit, asking me to declare that it need not indemnify Precision for most of any arbitration award. And on January 2, 2025, the arbitrator awarded Powell over $800,000 in damages, fees, and costs.

Powell moved to dismiss the suit as unripe because it was filed before the damages award and because Scottsdale only had a cause of action against its insured, not a third party like Precision. Powell also filed a counterclaim, seeking to recover against Scottsdale as a third party and asking me to declare that

_____

[1] A press brake is a machine used to bend sheet metal. *Press brake*, OXFORD ENGLISH DICTIONARY (Dec. 2025).

2

Scottsdale must indemnify Precision. Precision filed a counterclaim seeking that same declaratory judgment. Scottsdale for its part moved to dismiss Powell's counterclaims on the basis that it had no standing to sue, given that Powell was not the insured but an unrelated third party. Finally, in December 2025, Precision assigned all of its interests under the insurance policy to Powell, and Powell moved for itself to be substituted as the real party in interest for the claims involved in this suit. Scottsdale objected to that motion.

## II.

Federal Rule of Civil Procedure 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Precision transferred its interests in this litigation to Powell, who has moved for me to substitute it for Precision. Scottsdale's first objection to the substitution is that the assignment was invalid for lack of consideration.

An assignment is a "transfer of some identifiable interest from the assignor to the assignee." *Brandon Apparel Group v. Kirkland & Ellis*, 887 N.E.2d 748, 756 (Ill. 2008) (citations omitted). Assignments are contracts and are governed by the law of contracts. *Northwest Diversified, Inc. v. Desai*, 818 N.E.2d 753,

3

761 (Ill. App. Ct. 2004). One requirement for contractual validity is consideration. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951–52 (7th Cir. 2013). Most simply, consideration requires each of the parties to the contract to have bargained to receive something in exchange for something else that they will give up. 3 Williston on Contracts (4th ed.) § 7:4 (Consideration and meaning of benefit and detriment). The assignment at issue specifies that it will be governed by Texas law, and although neither party has identified a conflict of law, they agree that Texas law controls.

Scottsdale argues that the assignment lacked sufficient consideration because it awarded Precision only ten dollars in exchange for its interests under the insurance policy. Scottsdale complains that insured parties normally get much more under such insurance assignments: "valid assignments may involve a covenant not to execute a judgment, or a release in favor of the insured." ECF 59 at 3. But as Powell points out in its reply, it is immaterial that other assignments may provide for more consideration—the question is whether ten dollars is enough. ECF 60 at 3–4. The Texas Supreme Court says that it is:

> Where a contract recites the payment of a nominal amount of money as its consideration, the contract is valid, even if the nominal sum is not actually paid. The nominal consideration merely creates an obligation to pay such sum, which may be enforced by the other party. The real consideration provided...was the obligation to pay the ten dollars, and it is of no consequence whether the ten dollars was paid or not.

4

*1464-Eight, Ltd. v. Joppich,* 154 S.W.3d 101, 104 (Tex. 2004); *see also Dale v. Alethes, LLC*, 2013 WL 12114867, *1, *3 (W.D. Tex. July 1, 2013) (collecting cases).

Scottsdale's second objection (though it appears only in a footnote) is that the assignment is invalid because Precision's insurance policy contains an anti-assignment clause and because Texas courts enforce such clauses. Powell replies that, because the policy has no choice of law clause, it is Illinois law that applies, and that Illinois courts do not honor anti-assignment clauses in insurance policies when the assignment takes place after a loss. Powell is correct on both points.

Federal courts sitting in diversity apply the conflict of laws rules of the forum state. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). In Illinois, "Absent an express choice of law, insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995). And Illinois courts, following the "great weight of authority," apply the rule that "general stipulations in policies prohibiting

assignments thereof except with the consent of the insurer apply to assignments before loss only, and do not prevent an assignment after loss." *Cincinnati Ins. Co. v. American Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 234 (Ill. App. Ct. 2008) (citations omitted).

Precision's insurance policy does not contain a choice of law clause.[2] Without such a provision, Illinois choice of law rules will apply Illinois law. Illinois is the forum state, Powell's factory is in Illinois, the policy insured work taking place in Illinois, the incident giving rise to the insurance claim happened in Illinois, and the insured was an Illinois resident. Scottsdale and Powell have connections to Ohio, Arizona, and Texas, but nothing which would prevent Illinois from being the place which most bears "a rational relationship to the contract." *Lapham-Hickey*, 655 N.E.2d at 845 (citations omitted).

Likewise, if the insurance policy contains an anti-assignment clause,[3] Illinois law will not apply it to prevent Precision's

---

[2] Or, to the extent that Scottsdale has not attached the entire policy, the sections which it has attached do not contain such a clause and Scottsdale has not claimed that such a clause exists.

[3] Scottsdale asserts that "the Assignment is invalid under Texas law because of the Policy's anti-assignment clause, which requires the insurer's approval prior to any assignment." ECF 59 at 3 n.1. But the sections of the insurance policy that Scottsdale has attached to its various filings do not appear to contain an anti-assignment clause.

assignment to Powell. Here, not only has a loss occurred giving rise to a claim against Scottsdale—a "chose in action"[4]—but has also been arbitrated and reduced to, subject to the accumulation of additional costs, a sum certain. In that context, Illinois law will not prevent an assignment. *Cincinnati Ins. Co.*, 898 N.E.2d at 234; *accord Young v. Chicago Fed. Sav. And Loan Ass'n*, 535 N.E.2D 977, 980-81 (Ill. App. Ct. 1989) ("An insurance policy that is assigned after a claim arises is an assignment of the policy proceeds; such a transaction results in an assignment of a chose in action which does not require the insurer's consent.").

As such, I grant Powell's motion under Rule 25(c) and substitute Powell for Precision as the real party in interest.

---

[4] "The right to bring an action to recover a debt, money, or thing." *Chose*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Also: "The term *chose in action* has been in common use for a long time, but some doubts have been recently raised as to its precise meaning...A Divisional Court, however, has now given us the following definition: '"chose in action" is a known legal expression used to describe all personal rights of property which can only be claimed or enforced by action, and not by taking physical possession.' *Torkington v. Magee*, [1902] 2 K.B. p. 430. The phrase 'rights *of property*' does not seem a very happy one, but it is quite clear that the court meant to include under the term *chose in action* rights under a contract and rights of action arising from breach of contract." *Id.* (quoting William R. Anson, *Principles of the Law of Contract* 362 n.(b) (Arthur L. Corbin ed., 3d Am. ed. 1919)).

**III.**

Powell moved to dismiss Scottsdale's complaint on two grounds. First, Powell argued that because, at the time of filing, the Texas arbitration had found Scottsdale liable but had not reduced that liability to a judgment, Scottsdale's claim was unripe. And second, Powell argued that Scottsdale had stated a claim only against Precision, but not against itself. Both of these grounds are moot.

"'The duty to indemnify arises only after the insured becomes legally obligated to pay damages in the underlying action.'" *Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) (quoting *Aetna Cas. & Surety Co. v. Prestige Cas. Co.*, 553 N.E.2d 39, 41 (Ill. App. Ct. 1990)). The Texas arbitrator entered a "Reasoned Final Award" in the arbitration on January 2, 2025, and on April 29, 2025, Judge Andrew Hanen in the Southern District of Texas confirmed that award. As such, "the insured [has become] legally obligated to pay damages in the underlying action," and the question of indemnification is ripe. *Id.*

As for Powell's second argument, that Scottsdale addressed its complaint to a contract with Precision, rather than with Powell, that contention has been mooted by Powell's Rule 25 motion, which put itself in Precision's place.

8

**IV.**

In its motion, Scottsdale moved to dismiss only that portion of Powell's counterclaim in which Powell requested its attorney's fees and costs. Scottsdale's motion, Powell's response, and Scottsdale's reply all deal in significant part with Powell's then-status as a third party to Scottsdale's and Precision's insurance contract. Now, with Powell having stepped into Precision's shoes, the situation has changed, and much of that argument may well also be moot. As such, I will give the parties time to provide additional briefing (or to withdraw their arguments, as the case may be) before deciding Scottsdale's motion.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: February 19, 2026

9